UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-132-GWU

KATHY NOLAN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Kathy Nolan brought this action to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

        impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ."  Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Nolan, a 42-year-old former gas station attendant, machine operator and assembler with a high school equivalent education, suffered from impairments related to hyperthyroidism, atrial fibrillation, single vessel artery disease and depression. (Tr. 10, 14). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 12, 14). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 14-15). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 15).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record also does not mandate an immediate award of Social Security benefits. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question presented to Vocational Expert Sally Moore included an exertional limitation to light level work, restricted from a full range by

7

such non-exertional restrictions as (1) the need for a sit/stand option in intervals of 30 minutes; (2) an inability to ever climb ropes and ladders; (3) the need to avoid exposure to vibration, hazards and temperature extremes; and (4) a limitation to simple routine tasks requiring no more than simple work-related decisions. (Tr. 44-45). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 45). The ALJ later added a restriction concerning a need to avoid exposure to loud noises which the witness indicated would not reduce the available job numbers. (Id.). The ALJ inquired as to the effect of a limitation concerning having only minimal interaction with the public. (Id.). Moore testified that while some jobs such as receptionist and information clerk would be eliminated, a significant number would remain available. (Id.). The ALJ relied upon this testimony to support the administrative decision.

No treating or examining source of record, including the staff at the Lexington Clinic (Tr. 204-208, 433-467), the staff at the Red Bird Medical Center (Tr. 209), the staff at the Redbud Family Health Center (Tr. 210-216, 376-390, 400-410, 470-476, 485-510), the staff at the Appalachian Regional Healthcare (Tr. 217-338, 366-375, 468-469, 511-566, 609-702), Dr. Frank Mongiardo (Tr. 329-365), and the staff at the Appalachian Heart Center (Tr. 391-399, 734-759) identified the existence of specific physical restrictions. In evaluating Nolan's physical condition, the ALJ relied heavily upon the opinions of the non-examining medical reviewers. The record was reviewed by Dr. Darrell Caudill (Tr. 425-432) and Dr. Parandhamulu Saranga (Tr.

593-600), each of whom restricted Nolan to light level work with an inability to more than occasionally climb ladders, ropes or scaffolds. Dr. Saranga also indicated that the plaintiff needed to avoid concentrated exposure to temperature extremes. (Tr. 597). The physical factors of the hypothetical question were essentially compatible with these opinions.

Dr. Vidya Yalamanchi, a treating source at the Appalachian Heart Center, while not identifying specific physical restrictions, did opine that Nolan was completely disabled from performing work activities. (Tr. 765). This opinion was completely ignored by the ALJ who stated that "as far as opinion evidence, there is no treating physician's opinion as to the claimant's physical ability to perform work." (Tr. 13). The plaintiff argues that this opinion supports her disability claim and the ALJ's failure to address it was reversible error. The defendant asserts that this failure to mention Dr. Yalamanchi was harmless error because his disability opinion was not binding on the ALJ. The court must agree with the plaintiff.

As noted by the defendant, the administrative regulations provide that a statement that a patient is "disabled" is an administrative finding reserved to the Commissioner and is not binding on an ALJ. 20 C.F.R. § 404.1527(e)(1). Social Security Ruling (SSR) 96-5p states that opinions reserved to the Commissioner cannot be given controlling weight or even special significance even when issued by a treating source. Thus, the defendant believes that the ALJ's failure to address this opinion would be harmless error since it was not binding. However, SSR 96-5p also states that

opinions from medical sources on issues reserved to the Commissioner "must never be ignored" since the adjudicator is required to evaluate all evidence in the case record including opinions from medical sources on issues reserved to the Commissioner. The Ruling makes clear that ALJs must still apply the applicable factors in 20 C.F.R. § 404.1527(d) to consider how well supported the opinion is and its consistency with the record as a whole. One of the requirements under § 404.1527 is that the ALJ must give good reasons for the weight given to the opinion of a treating source. 20 C.F.R. § 404.1527(d)(2). The Sixth Circuit Court of Appeals has found that the failure of the administration to follow its own procedural requirements can constitute reversible error even if the case is otherwise supported by substantial evidence. Wilson v. Commissioner of Social Security, 378 F.3d 541, 546 (6th Cir. 1994). In the present action, the ALJ overlooked the treating physician's opinion and, so, did not give good reasons for rejecting it. See Bowen v. Commissioner of Social Security, 478 F.3d 472, 478 (6th Cir. 2007). The Sixth Circuit Court of Appeals noted in Wilson that one of the purposes for requiring the ALJ to provide good reasons for rejecting the opinion of a treating source was to help legally unsophisticated disability claimants understand why the favorable opinions of their treating sources were rejected. Wilson, 378 F.3d at 544. Certainly, a claimant whose treating heart specialist had indicated she was totally disabled would be confused when this opinion was rejected by an ALJ without any discussion of the opinion. Therefore, the ALJ needed to address this opinion of a treating source even if it was not binding on the administration.

The defendant asserts that the ALJ's failure to articulate good reasons for rejecting the opinion of Dr. Yalamanchi would be harmless because <u>Wilson</u> contains an exception if the physician's opinion is "so patently deficient that the Commissioner could not possibly credit it." <u>Wilson</u>, F.3d at 547. The court notes that Dr. Yalamanchi related his disability opinion to Nolan's history of heart disease and irregular heart beat. (Tr. 765). An EKG revealed atrial fibrillation with non-specific T-wave changes. (Tr. 759). The plaintiff had a history of non-sustained ventricular tachycardia as revealed on a Holter Monitor. (Tr. 757). An echocardigraph revealed mild hypokinesia of the anteroseptal wall. (Tr. 750). Therefore, at least some objective medical evidence supports the doctor's opinion and the undersigned cannot conclude that the doctor's opinion was so "patently deficient" that it could not possibly be credited.

Wanda Collins, a nurse-practitioner, identified extremely severe mental limitations on an assessment form. (Tr. 760-763). Nolan asserts that the ALJ's failure to follow these restrictions was also reversible error. The plaintiff also argues that the failure of the ALJ to present these restrictions to the vocational expert as part of the hypothetical question was reversible error. However, the ALJ noted a number of good reasons why the opinion of Collins was not fully adopted in the text of his denial decision. (Tr. 13). Among the reasons for this finding was the fact that a nurse-practitioner is not an "acceptable medical source" under the federal regulations at 20 C.F.R. § 404.1513. (Id.). Therefore, Collins's opinion was properly rejected by the ALJ and her limitations were properly omitted from the hypothetical question.

Nolan also argues that the ALJ erred by failing to cite specific reasons for rejecting her credibility as required by SSR 96-7p. However, the court notes that the ALJ actually cited a number of reasons for this finding, including her testimony concerning her activities, the recent improvement in her thyroid problems since surgery, and the opinions of the state agency reviewers. (Tr. 12-14). Therefore, the undersigned must reject this argument of the plaintiff.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 16th day of February, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**